UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ANDRE BARNES,
Defendant.

22-CR-43 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

On June 29, 2023, Defendant Andre Barnes was sentenced to 120 months' imprisonment and three years of supervised release after pleading guilty to one count of unlawfully possessing ammunition as a felon. (*See generally* ECF No. 61.) Now before the Court is Barnes's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on the basis that his prior lawyer provided him with ineffective assistance of counsel. (ECF No. 83 ("Mot.").)

## I. Factual Background and Procedural History

Just after midnight on January 27, 2021, Barnes fired a gun between ten and fifteen times at a man in a residential neighborhood of the Bronx. (*See* ECF No. 55 ("PSR") ¶¶ 9-10; ECF No. 61 at 30.) On March 28, 2023, Barnes pleaded guilty to one count of unlawfully possessing ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). (*See generally* ECF Nos. 45, 57.) The Probation Office, when calculating Barnes's Guidelines sentencing range, applied the attempted second-degree murder cross-reference pursuant to U.S.S.G. §§ 2K2.1(c)(1)(A), 2X2.1, and 2A2.1(a)(2), which ultimately yielded a Guidelines range of 120-150 months, capped at the 120-month statutory maximum. (PSR ¶¶ 20-29, 83.) Barnes objected to the Presentence Report on the basis that "[t]he undisputed facts as presented are more consistent with an aggravated assault cross-reference offense than an attempted murder cross-reference offense." (ECF No. 53 at 3.)

Sentencing took place on June 29, 2023. During the imposition of the sentence, the Court first found that the Probation Office's application of the attempted second-degree murder cross-reference was proper because "the defendant had the intent to kill [the victim], even if only briefly." (ECF No. 61 at 30.) Nonetheless, the Court stated, its "ultimate sentence is not going to be different based on which of these cross-references apply, because either way, under the 3553(a) factors, I need to impose a sentence that is sufficient, but not greater than necessary, to serve the purposes laid out in the statute." (*Id.* at 31.) The Court subsequently adopted the Guidelines calculation, considered mitigating factors under 18 U.S.C. § 3553, and sentenced Barnes to 120 months of imprisonment and three years of supervised release. (*Id.* at 32-34.) The Court then invited objections, and the Government and defense counsel each confirmed that they had no objection to the sentence. (*Id.* at 34.)

On July 14, 2023, Barnes appealed his sentence to the Second Circuit, raising procedural and substantive reasonableness challenges. (ECF No. 60.) On October 29, 2024, the Second Circuit affirmed Barnes's conviction and sentence. *See United States v. Barnes*, No. 23-6773-cr, 2024 WL 4601465, at *3 (2d Cir. Oct. 29, 2024) (summary order). Fifteen months later, Barnes filed the instant motion to vacate his sentence under 28 U.S.C. § 2255. (Mot.) The Government opposed the motion on May 26, 2026 (ECF No. 90 ("Opp.")), and Defendant filed a reply in further support of vacatur on August 7, 2026 (ECF No. 93 ("Reply")). Pursuant to a Court order, Barnes's former counsel also filed an affidavit addressing Barnes's ineffective assistance claims. (ECF No. 89.)

## II. Legal Standards

### A. Section 2255 Motions

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to "vacate, set aside or correct" an unlawfully imposed sentence. 28 U.S.C. § 2255. To obtain relief under

§ 2255, a petitioner must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Section 2255 also provides that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "To warrant a hearing on an ineffective assistance of counsel claim [under § 2255(b)], the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). Per Rule 4(b) of the Rules Governing § 2255 Proceedings, however, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b) (1977) (amended 2019).

**B. Ineffective Assistance of Counsel**

"In order to prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)); *see also Massaro v. United States*, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

Under the first prong of this two-part test, the reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (alterations adopted) (quoting *Strickland*, 466 U.S. at 689); *see Strickland*, 466 U.S. at 689 ("[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). To satisfy the second prong, the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham*, 317 F.3d at 182. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," since "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

## III. Discussion

Barnes argues that his former counsel, Esere J. Onaodowan, provided him with ineffective assistance of counsel for two reasons: (1) she failed to present the harsh conditions of confinement at the Metropolitan Detention Center in Brooklyn ("MDC") as a mitigating factor at sentencing (Mot. at 7; Reply at 2-3), and (2) she failed to object to the fact that the Court purportedly announced its intended sentence before completing the Guidelines calculation (*id.* at 15).[1] The Court addresses these arguments in turn.

---

[1] In his § 2255 motion, Barnes also faults his prior counsel for (1) failing to raise to the Court at sentencing, as further evidence of harsh confinement conditions, an incident at MDC wherein Barnes was stabbed by other inmates (Mot. at 8-11), and (2) failing to present expert evidence on Barnes's trauma history in order to argue that Barnes had no "intent to kill" the victim (*id.* at 17-21). After the Government presented evidence that Barnes's stabbing took place *after* the

**A. Failure to Raise "Harsh Conditions" at Sentencing**

First, Barnes contends that he was provided ineffective assistance of counsel because, despite acknowledging the "abhorrent conditions" of Barnes's confinement at MDC in an earlier letter to the Court (*see* ECF No. 16 at 3), Onaodowan failed to raise this "harsh conditions" argument as a mitigating factor at sentencing (Mot. at 3-5). This argument is unavailing. "It is well established that counsel need not raise every non-frivolous issue simply because a client suggests it 'if counsel, as matter of professional judgment, decides not to present those points.'" *Crews v. Miller*, No. 19-CV-2091, 2019 WL 4861421, at *15 (E.D.N.Y. Sep. 30, 2019) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made."). "It is only in instances when counsel pursued 'clearly and significantly weaker' issues in lieu of 'significant and obvious' issues that counsel's conduct may be found to be constitutionally deficient." *Percan v. United States*, 294 F. Supp. 2d 505, 514 (S.D.N.Y. 2003) (quoting *Mayo*, 13 F.3d at 533).

In her affidavit, Onaodowan stated that her "professional opinion was that the compounded, epigenetic and generational trauma suffered by Mr. Barnes and his family was far more compelling mitigation under 18 U.S.C. 3553 (a) than Mr. Barnes' conditions of confinement at the MDC from his arrest in January 2022 until his sentencing on June 2023." (ECF No. 89 ¶ 11.) Onaodowan therefore "made the deliberate, tactical choice to fully develop and argue" Barnes's trauma history in her sentencing submission (*see id.*)—arguments that the

---

sentencing, however, and that Barnes's prior counsel *did* in fact marshal expert evidence on Barnes's trauma history in her sentencing submission, Barnes withdrew these arguments. (*See* Reply at 2, 10.) The Court accordingly does not consider them.

Court lauded as "excellent points" and ultimately did consider as mitigating factors at sentencing (ECF No. 61 at 33).

Barnes retorts that, during this time period, other courts had granted other defendants sentencing reductions based on the conditions of confinement at MDC, which undermines any strategic basis for Onaodowan's failure to raise this argument. (Reply at 5.) But Onaodowan may well have concluded in her conversations with Barnes that his experience at MDC was less severe than, or otherwise distinguishable from, the particularized and harrowing conditions presented by the defendants in those cases. *See, e.g.*, ECF No. 35 at 13-18, *United States v. Days*, No. 19-CR-619 (S.D.N.Y. Apr. 29, 2021) (describing multiple lockdowns, lack of medical care, floods with feces, freezing temperatures, and moldy food, among other things); ECF No. 90 at 6, 13-15, *United States v. Morgan*, No. 19-CR-209 (S.D.N.Y. May 5, 2020) (taking into consideration a medical report detailing the MDC's bungled COVID-19 pandemic response). In any event, "[i]t is not the role of the Court to second-guess counsel's strategic decisions." *Percan*, 294 F. Supp. 2d at 514; *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Onaodowan was under no obligation to advance every possible non-frivolous argument at sentencing. *See Mayo*, 13 F.3d at 533. Nor is there any indication that Onaodowan pursued "clearly and significantly weaker issues in lieu of significant and obvious issues," *Percan*, 294 F. Supp. 2d at 514 (quotation marks omitted), particularly in light of the success of her arguments regarding Barnes's trauma history (*see* ECF No. 61 at 33). Barnes's ineffective assistance claim thus fails on this basis.

**B. Failure to Object to Sequence of Sentencing**

Second, Barnes argues that he was rendered ineffective assistance when Onaodowan failed to object to the fact that the Court purportedly announced his sentence before completing the Guidelines analysis. (Mot. at 16.) In *Molina-Martinez v. United States*, the Supreme Court

observed that the Guidelines are the sentencing court's "starting point" and "initial benchmark," and that they "anchor . . . the district court's discretion." 578 U.S. 189, 198-99 (2016) (quotation marks omitted). Thus, "[f]ederal courts understand that they *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 198 (quotation marks omitted).

The Court abided by these requirements, and Barnes's assertions to the contrary are belied by the record. Barnes claims that the Court "announced the sentence before resolving the Guidelines dispute" (Mot. at 15 (cleaned up)), but the Court did no such thing: It simply began the proceedings by ruling on the cross-reference dispute and observed that, in any case, its "ultimate sentence [was] not going to be different based on which of these cross-references apply." (ECF No. 61 at 31.) After this statement, the Court completed the Guidelines analysis (*id.* at 32), considered mitigating factors under 18 U.S.C. § 3553 (*id.* at 33-34), stated its intended sentence of 120 months (*id.* at 34), and invited objections from the parties as to the intended sentence (*id.*). After receiving no objections, the Court formally sentenced Barnes to 120 months of imprisonment and three years of supervised release. (*Id.* at 34-35.) In other words, the Court's tentative and formal imposition of Barnes's sentence did not take place until *after* its calculation of the Guidelines, in conformity with the requirements laid out in *Molina-Martinez*.

Because the Court's sentencing proceedings did not contravene *Molina-Martinez*, as Barnes claims, Onaodowan committed no error by failing to object to the sentence on this ground. Additionally, since neither of Barnes's arguments make out a "plausible" claim of ineffective assistance of counsel, *Puglisi*, 586 F.3d at 213 (quotation marks omitted), the Court concludes that no hearing is warranted under 28 U.S.C. § 2255 and denies this motion.

## IV. Conclusion

For the foregoing reasons, Barnes's motion to vacate his sentence is denied.

The Clerk of Court is directed to close the motions at Docket Numbers 83 and 85.

SO ORDERED.

Dated: October 13, 2026
New York, New York

J. PAUL OETKEN
United States District Judge